UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                      Civil No. 06-3677(DSD/SRN)


Julie Ann Mayo,

        Plaintiff,

v.                                                          **ORDER**

City of Hopkins and
Mark Ledbetter and Mark
Kyllo, individually and
in their official capacities,

        Defendants.


   Daniel C. Guerrero, Esq. and Meshbesher & Spence, 1616
   Park Avenue South, Minneapolis, MN 55404, counsel for
   plaintiff.

   Jason M. Hiveley, Esq., Jon K. Iverson, Esq. Amber S.
   Lee, Esq. and Iverson Reuvers, 932 Ensign Avenue South,
   Bloomington, MN 55438, counsel for defendants.



     This matter is before the court on defendants' motion to dismiss or in the alternative for summary judgment. Based on a review of the file, record and the proceedings herein, and for the reasons stated, defendants' motion is granted in part and denied in part.


                              **BACKGROUND**

     In the early morning of January 2, 2006, defendants City of Hopkins police officers Mark Kyllo ("Kyllo") and Mark Ledbetter ("Ledbetter") responded to a domestic disturbance call at plaintiff

Julie Ann Mayo's ("Julie"[1]) home in Hopkins, Minnesota.[2]  Upon arrival, the officers found Julie and her daughter, Holly Mayo ("Holly"), in the kitchen.  Julie had been drinking alcohol and was arguing with her husband, Gary Mayo ("Gary"), about a perceived extramarital affair.  Holly informed the officers that Julie suffered from mental illness.  After further conversation, Holly joined her father in the living room.  Ledbetter remained in the kitchen with Julie to determine the cause of the disturbance and to calm her down while Kyllo moved into the living room to speak with Gary and Holly.

Soon thereafter, Julie asked Ledbetter if she could smoke a cigarette.  Ledbetter asked her not to smoke because he had asthma, and Kyllo told her she had to smoke outside.  Julie then picked up a cigarette and moved toward the living room to get her lighter that was on the coffee table near where Gary and Holly were sitting and Kyllo was standing.  As Julie reached for the lighter, Kyllo said "You're really starting to piss me off" and grabbed her.  He placed one hand on her right bicep, twisted her arm, and pushed her against the dining room wall, breaking her right arm in the

---

[1] The court will refer to members of the Mayo family by their first names to avoid confusion.

[2] Kyllo and Ledbetter had each responded to two or three unrelated calls at the Mayo household on earlier occasions.

2

process.[3] Kyllo then attempted to move Julie's arm behind her back, and Ledbetter gently grabbed her left arm and helped move her into the kitchen where Ledbetter put Julie's left arm behind her back and handcuffed her left wrist. Shortly thereafter, Ledbetter removed the handcuff from her left wrist, and Julie was transported to Methodist Hospital. Doctors diagnosed Julie with a spiral fracture of her right distal humeral shaft that eventually required surgery.

Based on the January 2 incident, plaintiff filed this 42 U.S.C. § 1983 and negligence action against Kyllo, Ledbetter and the City of Hopkins ("City"[4]) on September 11, 2006. On November 30, 2007, defendants moved to dismiss or in the alternative for summary judgment.

---

[3] There are significant discrepancies between the parties with respect to whether and how Julie was moving to get her lighter, how Kyllo responded and when and how Julie's arm was broken. The court, as it must, adopts plaintiff's account for purposes of this motion.

[4] Defendants contend that plaintiff has not stated any claims against the City because the claims are directed only at the individual officers. Plaintiff, however, sued the officers in their official capacities, which constitutes a claim against the City. Brockington v. City of Sherwood, 503 F.3d 667, 674 (8th Cir. 2007) ("A suit against a governmental actor in his official capacity is treated as a suit against the governmental entity itself.").

**DISCUSSION**

**I.  Summary Judgment Standard**

The court treats the current motion as one for summary judgment because it considered materials outside of the pleadings. See Fed. R. Civ. P. 12(d).  Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324.  Moreover, if a plaintiff cannot support each essential element of her claim, summary judgment must be granted because a complete failure of proof regarding an essential

4

element necessarily renders all other facts immaterial.  Id. at 322-23.

## II.  Qualified Immunity

Section 1983 of Title 42 of the United States Code provides in relevant part:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

Section 1983 is "'not itself a source of substantive rights'" but merely affords "'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).  Accordingly, a court considering a § 1983 claim must first "identify the specific constitutional right allegedly infringed."  Id. at 271 (citing Graham v. Connor, 490 U.S. 386, 394 (1989)).  Here, plaintiff alleges that Kyllo and Ledbetter violated her Fourth Amendment right to be free from the use of excessive force.[5]  Defendants argue that they are entitled to qualified immunity on this claim.

An officer violates the Fourth Amendment when he uses excessive force to effect the apprehension or detention of a free

---

[5] At oral argument, plaintiff conceded that the facts in the record do not support a Monell claim.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  Therefore, the court dismisses plaintiff's § 1983 claim against the City.

citizen.  See Graham, 490 U.S. at 395.  Excessive force is that which is "'excessive under objective standards of reasonableness.'" Wilson v. City of Des Moines, 293 F.3d 447, 450 (8th Cir. 2002) (quoting Saucier v. Katz, 533 U.S. 194, 201-02 (2001)).  When evaluating an officer's use of force, the court must pay "careful attention to the facts and circumstances of [the] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight."  Graham, 490 U.S. at 396.  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id. at 396 (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968)).  The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation."  Id. at 396-97; see also Nelson v. County of Wright, 162 F.3d 986, 990-91 (8th Cir. 1998).  However, it is well established that "no greater force should be used in making an arrest than was reasonable under the circumstances."  Nelson, 162 F.3d at 990.

Qualified immunity protects from civil liability government agents who perform discretionary functions, so long as the

challenged actions are objectively reasonable in light of clearly established legal principles. See Anderson v. Creighton, 483 U.S. 635, 638 (1987). Qualified immunity is a question of law that should be decided early so as to shield appropriate officials from suit. Gainor v. Rogers, 973 F.2d 1379, 1382-83 (8th Cir. 1992). The court applies the doctrine of qualified immunity in a manner that "'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

### A. Violation of a Constitutional Right

In evaluating a claim of qualified immunity, the initial inquiry is whether the facts show a violation of a constitutional right. Saucier, 533 U.S. at 201; Craighead v. Lee, 399 F.3d 954, 961 (8th Cir. 2005). If the court determines that the facts, construed in the light most favorable to the nonmoving party, do not establish a violation of a constitutional right, no further inquiry is necessary. Saucier, 533 U.S. at 201.

#### 1. Officer Ledbetter

The only evidence that Ledbetter used excessive force is plaintiff's uncorroborated testimony that one of the officers hit her with his stick or fist while attempting to handcuff her. Plaintiff, however, did not address this in her complaint or brief, and she admitted in her deposition that Ledbetter did not use

excessive force or do anything to physically harm her.  Therefore, the court determines that plaintiff has not established that Ledbetter violated her Fourth Amendment rights, and he is entitled to qualified immunity.

### 2.   Officer Kyllo

With respect to Kyllo, the parties' accounts of what transpired from the time Julie asked to smoke until her arm was broken sharply conflict.  Plaintiff maintains that she was merely reaching for her lighter when Kyllo pushed her up against the dining room wall and twisted her arm until it broke, even though she was not resisting.  Accepting this version of events, a jury could reasonably conclude that Kyllo violated the Fourth Amendment by using greater force than necessary under the circumstances.  In contrast, however, the officers assert that plaintiff lunged at her husband or Kyllo and that in so doing she came into contact with Kyllo's outstretched hand, at which point Ledbetter and Kyllo grabbed her and escorted her into the kitchen.  Kyllo and Ledbetter further maintain that once in the kitchen plaintiff's arm was broken while she was actively resisting being handcuffed.  In light of these discrepancies, the court determines that a genuine issue of fact remains as to whether Kyllo used excessive force in restraining plaintiff.

**B.   Clearly Established Law**

Because the facts viewed in a light most favorable to plaintiff support a constitutional violation by Kyllo, the court must determine whether the constitutional right was "clearly established" at the time of the violation. Moore v. Indehar, 514 F.3d 756, 759 (8th Cir. 2008) (citation omitted). The right to be free from excessive force is clearly established. Id. However, the contours of that right must be "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Wilson v. Layne, 526 U.S. 603, 614-15 (1999) (quoting Anderson, 483 U.S. at 640). In other words, to be clearly established, "the unlawfulness must be apparent" in light of preexisting law. Anderson, 483 U.S. at 640. This is a "fact-intensive inquiry and must be undertaken in light of the specific context of the case, not as a broad general proposition." Moore, 514 F.3d at 759 (citation and quotation omitted).

Here, plaintiff alleges that without physical or verbal provocation, Kyllo grabbed her with enough force and in such a manner as to break her arm. Moreover, plaintiff maintains that throughout the encounter she did not resist being placed in handcuffs. Considering the severe injury suffered by plaintiff, the fact that she had committed no crime, that she was not going to be arrested and that she was not arrested, the court determines that under the facts alleged by plaintiff, a reasonable officer

9

would have understood that his actions violated the Fourth Amendment.  Therefore, Kyllo is not entitled to qualified immunity, and summary judgment is not warranted on plaintiff's excessive force claim.

### III. Negligence

#### A. Failure to State a Claim

As an initial matter, defendants argue that plaintiff has not properly asserted a prima facie claim for negligence because her complaint states only that her "damages were directly and proximately caused by the negligence and/or reckless conduct" of the officers.  (Compl. ¶ 21.)  Although plaintiff's claim fails to allege the requisite duty and breach of that duty, the court determines that the allegations contained in the complaint against the individual officers, construed liberally and in a light most favorable to plaintiff, provided the officers with "'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Moreover, although plaintiff did not expressly allege that the City was vicariously liable for the officers' actions, the complaint clearly describes the officers working in their capacities as City police officers.  Therefore, the court determines that the City had

adequate notice of the vicarious liability claim based upon the actions of its officers.[6]

### B. Official Immunity

Defendants maintain that they are entitled to official immunity on the negligence claim. "The doctrine of official immunity protects public officials from liability for discretionary actions taken in the course of their official duties." Bailey v. City of St. Paul, 678 N.W.2d 697, 700 (Minn. Ct. App. 2004) (citing Janklow v. Minn. Bd. of Exam'rs for Nursing Home Adm'rs, 552 N.W.2d 711, 716 (Minn. 1996)). Such immunity exists "'to protect public officials from the fear of personal liability that might deter independent action and impair effective performance of their duties.'" Id. (quoting S.L.D. v. Kranz, 498 N.W.2d 47, 50 (Minn. Ct. App. 1993)). Official immunity analysis proceeds in two steps. Id. at 701. First, a court asks whether the conduct challenged by the plaintiff is discretionary or ministerial. See id. Second, if the conduct is discretionary, a court asks whether the officers' conduct was malicious or willful. See id.

Official immunity protects discretionary acts, which are acts undertaken in the exercise of individual judgment. Id. However, official immunity does not protect ministerial acts, which are acts

---

[6] This is distinct from determining that plaintiff has alleged negligence by the City itself, which plaintiff has not done. Cf. Hawkins v. City of Farmington, 189 F.3d 695, 706 (8th Cir. 1999) (construing complaint broadly to assert vicarious liability against city where no viable direct claim for negligence).

undertaken pursuant to a specific duty arising from fixed and designated facts. Id. "Generally, police officers are classified as discretionary officers entitled to [official] immunity." Johnson v. Morris, 453 N.W.2d 31, 42 (Minn. 1990) (citing Elwood v. Rice County, 423 N.W.2d. 671, 678 (Minn. 1988)).  Here, the officers' conduct involved the exercise of individual judgment as to the amount of force necessary to properly maintain a safe environment and to control plaintiff.  Therefore, the officers' actions were discretionary and are protected unless they were willful or malicious.

A public official commits willful or malicious conduct if he intentionally commits an act that he has reason to believe is prohibited.  Rico v. State, 472 N.W.2d 100, 106-07 (Minn. 1991). A plaintiff cannot rely on "bare allegations of malice" to overcome a defense based on official immunity.  Harlow v. Fitzgerald, 457 U.S. 800, 817 (1982).  Instead, she must present specific facts evidencing bad faith.  Reuter v. City of New Hope, 449 N.W.2d 745, 751 (Minn. Ct. App. 1990).

As noted above with respect to the excessive force claim, nothing in the record suggests that Ledbetter acted inappropriately, much less willfully or maliciously.  Therefore, Ledbetter is entitled to official immunity.  However, taking all facts and inferences in a light most favorable to plaintiff, an issue of fact remains as to whether Kyllo's conduct was willful or

malicious.  Specifically, plaintiff claims that as she reached for her cigarettes Kyllo stated, "You're really starting to piss me off," grabbed her arm, twisted it and pushed her against the dining room wall, breaking her arm.  In light of these allegations, the court determines that Kyllo is not entitled to official immunity.  Moreover, because official immunity does not apply to Kyllo, the City is not protected by vicarious official immunity.  See Gordon v. Frank, 454 F.3d 858, 866 (8th Cir. 2006) (no vicarious official immunity if no official immunity).  Accordingly, the court grants summary judgment as to Ledbetter but denies summary judgment as to Kyllo and the City on plaintiff's negligence claim.

## CONCLUSION

Therefore, **IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Doc. No. 11] is granted as to Mark Ledbetter and denied as to Mark Kyllo and the City of Hopkins.

Dated:  April 28, 2008

s/David S. Doty  
David S. Doty, Judge  
United States District Court